1814.

GRAY
v.
THOMPSON.

———◆ ✳ ◇———

*June* 2d.                    GRAY *against* THOMPSON.,

Where an assignee of property, in *trust*, for the benefit of the creditors of the assignor, having received the proceeds of the property in 1801, neglected, for many years, to distribute the fund among the creditors, pursuant to his trust, he was decreed to pay the amount, with *interest*, from the time he received the money, and all the *costs* of the suit brought by the creditors.

THE bill, in this cause, which was filed in 1803, stated, that *Edward Creighton* and *James Plaine*, partners in trade, were indebted, in 1798, and afterwards, to the plaintiff, in the sum of 213 dollars. *Plaine* died in 1798, and *Creighton,* the surviving partner, being desirous to pay the debt due to the plaintiff, and other debts, put into the hands of the defendant a bill of exchange, and goods, wares, and merchandises, to pay certain creditors of *Creighton* and *Plaine*, and among them the plaintiff. *Creighton*, afterwards, went to *New-Orleans*, where he died. The bill charged, that the defendant had received the money on the bill of exchange, and the proceeds of the goods so placed in his hands, but refused to account for the same. The plaintiff prayed a discovery of the amount in the hands of the defendant, and that he should account therefor, or for so much as

was sufficient to pay the principal and interest due to the plaintiff.

The bill was filed, as well in behalf of the plaintiff, as such other of the creditors of *Creighton* and *Plaine* as should come in and contribute to the expense of the suit. *Thompson*, in his answer, admitted, that he received of *Creighton* an assignment of the proceeds of certain goods, shipped by *Creighton* and *Plaine* to *Savannah ;* and that, after much difficulty, he received the proceeds, and also a bill for 100 pounds sterling; that, at the time he received the assignment, he gave a receipt to *Creighton,* promising to distribute the fund between the other creditors of *Creighton* and *Plaine,* named in the receipt, and himself, but that he had no recollection or knowledge of the names of the said creditors, nor of the amount of their several debts, not having retained a copy of the receipt, nor supposing that *Creighton* was about to leave the city of *New-York,* where all the parties resided ; that, in fact, *Creighton* soon after went to *New-Orleans,* where he had since resided, and the defendant had written to him several times, requesting of him a copy of the receipt, or directions how to distribute the fund, but had never heard from him ; and the defendant professed a readiness to distribute the fund, whenever he was informed of the names of the creditors, and of the amount of their respective debts.

The assignment of the goods to the defendant, by *Creighton,* was proved by a witness who was a clerk to the defendant at the time, and who entered the goods in the books of the defendant, to the credit of the estate of *Creighton* and *Plaine :* and there being a deficiency of about 400 dollars, of the full amount due to their creditors, *Creighton* drew a bill of exchange on *Edinburgh,* in favour of the defendant, for 100 pounds sterling, dated the 10th of *July,* 1799, at sixty days sight, which had been duly honoured and paid, and was passed, also, in the books of the defendant, to the credit of the same fund ; that in *December,* 1801,

1814.  'after the witness had left the service of the defendant, he
GRAY   was requested, by him, to assist in making out a distribution
v.     of the fund among the creditors of *Creighton* and *Plaine,* as
THOMPSON. it was then ready to be distributed, but the witness, being
then about to leave the city, did not attend to the defendant's
request.

The master's report stated, that the amount of the trust
property in the hands of the defendant, in *July,* 1799, was
1,632 dollars and 71 cents, and that the debt due from
*Creighton* and *Plaine* to the plaintiff was, on the 11th *March,*
1799, 213 dollars and 84 cents.

*Boyd,* for the defendant, contended, that being an inno-
cent trustee, the defendant was not chargeable with *interest*
or *costs,* but merely for the amount of the plaintiff's debt.
He cited 1 *Vern.* 110.   1 *Ves.* jun. 452.   *Prec. in Chan.*
254.

*Harison* and *Wilkins,* contra, insisted, that the defendant
had been guilty of gross negligence; having received the pro-
perty, in 1799, and had been in cash for the amount since
1801, without having made any distribution of the fund; and
that he ought, therefore, to pay *interest* and costs.   They cited
1 *Vern.* 196.   2 *Vern:* 548.   1 *Bro. Ch. Cas.* 362. 375.
384, 385.   10 *Mod.* 21.

THE CHANCELLOR.   The "defendant received the trust
fund as early as *July,* 1799, and a list of the creditors, of
whom the plaintiff was one, and he promised to distribute
the fund among the creditors, according to a list of them,
named in a receipt which he gave to *Creighton.*   He has
not done it, and the plaintiff filed his bill in *April,* 1803.
The defendant renders no sufficient excuse for not distribu-
ting this fund.   He appears to have been guilty of negli-
gence, and he does not show what he did with the fund in
the mean time.   The presumption is, that he appropriated

it to his own use. He is justly chargeable with *interest*, on the fund, from the time it was converted into cash, and with the *costs* of suit. This is the rule of the court in the case of a negligent trustee, and the cases which were cited by the plaintiff's counsel, particularly the one of *Treves* v. *Townshend*, in 1 *Bro.* 384, 385., are to this point. Let the decree be so entered accordingly.